ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. Three legal entities in which David Klaus (David) had a significant interest sued Ernest G. Thomas (Ernest) and Camille S. Thomas (Camille) and argued that because a body of water described as a stream or a “bayou” separated a one-hundred-acre portion of their property from the remainder, they had an easement over one of two private roads on the Thomases’ property. The Sharkey County Chancery Court found no merit to the Klaus entities’ position and denied relief. Aggrieved, the Klaus entities appeal. Finding no error, we affirm the chancellor’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. The three plaintiffs in this matter were Evanna Plantation, Inc., the David Klaus Trust, and Sabill Farms Partnership. Two plaintiffs actually owned the property: Evanna Plantation and the David Klaus Trust. Sabill Farms Partnership did not own any property. Instead, Sabill Farms leased the property at issue from Evanna Plantation and the David Klaus Trust.[1]
¶ 3. The property at issue is southeast of the intersection of two public roads in Sharkey County, Mississippi: Oil Well Road, which runs east and west, and Sabill Road, which runs north and south. The Klaus entities own or have an interest in the property immediately southeast of the intersection of Oil Well Road and Sabill Road. A moving body of water described as a stream or a bayou, but commonly known as “Coon Bayou” flows in a general direction northeast to southwest. Coon Bayou lies east of the point at which Oil Well Road intersects Sabill Road. In effect, Coon Bayou creates a natural barrier to a one-hundred-acre triangular section of the Klaus entities’ property on the eastern side of Coon Bayou.
¶ 4. That one-hundred-acre section of property is central to this dispute. The eastern border of the Klaus entities’ property abuts the western border of Ernest’s property. Additionally, its southern border abuts the northern border of Camille’s property. The Klaus entities filed a complaint against the Thomases in the Shar-key County Chancery Court. In general terms, the Klaus entities sought ingress and egress to the one-hundred-acre section of property at issue via multiple easement theories and an injunction prohibiting the Thomases from blocking their access.
¶ 5. For clarity’s sake, it is necessary to distinguish the separate easements that the Klaus entities sought. Evanna Plantation claimed it had a prescriptive easement over the private road (“Ernest’s road”) that runs south of Oil Well Road across Ernest’s property. Additionally, Evanna Plantation claimed it had an easement by necessity and/or a prescriptive easement over the private road (“Camille’s road”) *445 that runs east of Sabill Road across Camille’s property.[2]
¶ 6. The David Klaus Trust claimed it had an express easement, an easement by necessity, and a prescriptive easement over Ernest’s road. The David Klaus Trust also claimed it had a prescriptive easement over Camille’s road. Sabill Farms requested compensatory damages of $4,200 per year from 2003 through 2007 in the form of lost rental opportunities. Sabill Farms also requested $5,000 in damages for the cost of cutting the undergrowth on the one-hundred-acre section of property.
¶ 7. On May 22, 2007, the parties went before the chancellor for a trial. Ultimately, the chancellor found that the Klaus entities were not entitled to any form of an easement over Ernest’s road or Camille’s road. It follows that the chancellor declined to grant an injunction or award damages to the Klaus entities. Aggrieved, the Klaus entities appeal.
STANDARD OF REVIEW
¶ 8. We review a chancellor’s findings of fact pursuant to our familiar “manifest error/substantial evidence” standard. Biddix v. McConnell, 911 So.2d 468, 474(¶ 17) (Miss.2005). We may only disturb a chancellor’s factual determinations if the chancellor committed an abuse of discretion, “was manifestly wrong, clearly erroneous, or applied the wrong legal standard.” Id. at 474-75(¶ 17).
ANALYSIS
¶ 9. The Klaus entities appeal and argue that the chancellor erred when she failed to find that they had some form of easement over Ernest’s road or Camille’s road. Each and every easement that the Klaus entities sought was by virtue of David’s interactions with the Thomases. In that light, there is no need to conduct a separate analysis for each of the Klaus entities that sought an easement. However, we must distinguish the separate easement theories that the Klaus entities claim the chancellor should have recognized.
I. EXPRESS EASEMENT
¶ 10. The Klaus entities claim that the chancellor erred when she declined to grant an express easement over Ernest’s road. The Klaus entities did not claim that any particular transfer instrument granted them an express easement. Instead, they base their argument for an express easement entirely on language from Dieck v. Landry, 796 So.2d 1004 (Miss.2001). The Klaus entities are misplaced in relying on Dieck to establish an express easement. In Dieck, a chancellor found that two landowners had a prescriptive easement over an adjacent landowner’s property. Dieck, 796 So.2d at 1007(¶ 8). The Mississippi Supreme Court affirmed the chancellor’s judgment. Id. at 1009(¶ 17). Whether there was an express easement was not at issue. The Klaus entities may not rely on Dieck to argue that they had an express easement. In effect, the Klaus entities failed to cite any authority in support of their argument. Accordingly, this issue is procedurally barred. M.R.A.P. 28(a)(6).
II. EASEMENT BY NECESSITY
¶ 11. The Klaus entities claim the chancellor erred when she did not find *446 that they had an easement by necessity over either Ernest’s road or Camille’s road. An easement by necessity is one of two forms of implication easements. Fike v. Shelton, 860 So.2d 1227, 1230(¶10) (Miss.Ct.App.2003). “An easement by necessity arises by operation of law when part of a commonly-owned tract of land is severed in a way that renders either portion of the property inaccessible except by passing over the other portion or by trespassing on the lands of another.” Id. at (¶ 11) (citing Broadhead v. Terpening, 611 So.2d 949, 954 (Miss.1992)). “A claimant seeking an easement by necessity has the burden of proof and must establish that he is entitled to a right of way across another’s land.” Id.
¶ 12. “[A]n easement by necessity may be created by proving only reasonable necessity rather than absolute physical necessity.” Swan v. Hill, 855 So.2d 459, 463(¶ 18) (Miss.Ct.App.2003) (citing Fourth Davis Island Land Company v. Parker, 469 So.2d 516, 520 (Miss.1985)). In determining what is reasonably necessary, the operative consideration is “whether an alternative would involve disproportionate expense and inconvenience.” Id. at 464(¶ 21). An alternative would involve disproportionate expense and inconvenience if “the expense of making the means of access available would exceed the entire value of the property to which access was sought.” Id.
¶ 13. The Klaus entities argue that without an easement they would be forced to construct some form of crossing over Coon Bayou. According to the Klaus entities, the expense of making a means of access to the one-hundred-acre section of property on the east side of Coon Bayou would exceed the entire value of the one hundred acres. The Klaus entities also point out that “[a]n easement is reasonably necessary if the landowner’s only alternative route is by building a bridge.” Id. at (¶ 22). However, there is no evidence that the only alternative route aside from Ernest’s road or Camille’s road is to build a bridge.
¶ 14. On direct examination, David testified that he would have to create some form of crossing over Coon Bayou if the chancellor did not award the Klaus entities an easement. David’s attorney asked whether one could cross Coon Bayou “by using culverts or would it be [a] bridge structure, if you know?” David responded, “[t]he safer route would be a bridge.” However, on cross-examination, David testified that to cross Coon Bayou “[y]ou’d probably have to put two culverts together then bring the dirt in and make it wide enough for a combine to go through.” Consequently, the chancellor heard testimony from David that a culvert would be a sufficient means to cross Coon Bayou.
¶ 15. Additionally, it bears mentioning that other evidence indicated that a culvert and earthworks could be an acceptable means of crossing Coon Bayou. That is exactly the means that the Thomases’ predecessor in title utilized where Camille’s road crosses Coon Bayou. William Moore, the son of the Thomases’ predecessor in title, provided an affidavit and stated that his father and Bill Klaus, David Klaus’s uncle, had an agreement by which “Mr. Klaus could use the road and the crossing across Coon Bayou to access Mr. Klaus’s land on the east side of the bayou.” The evidence indicated that the culvert under Camille’s road washed out in 1995. Moore’s affidavit also stated that, in 1998, his father asked David to share the expense of repairing the crossing by creating a culvert from an old fuel tank. David declined to share the expense and stated that he would rather use Ernest’s road to access his property. In any event, we cannot find that the chancellor abused her *447 discretion when David testified that either a bridge or a culvert would suffice to cross Coon Bayou.
¶ 16. In addition to the lack of proof that a bridge was the sole means to access the one-hundred-acre property at issue, there is absolutely no testimony as to what it would cost to construct either means of crossing Coon Bayou. Likewise, there is no testimony as to the value of the one-hundred-acre section of property. Without such evidence, we are unable to ascertain the difference in the expense involved in constructing some means of crossing Coon Bayou versus the value of the property at issue. Suffice it to say, our standard of review precludes finding that the chancellor erred under the circumstances.
III. PRESCRIPTIVE EASEMENT
¶ 17. The Klaus entities claim the chancellor erred when she declined to find a prescriptive easement over Ernest’s road or Camille’s road. “[T]he standard burden of proof needed to establish a prescriptive easement is the same as for a claim of adverse possession of land.” Bid-dix, 911 So.2d at 475(¶ 18). To acquire [a] ... prescriptive easement the claimant must show that the possession was: (1) open, notorious, and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. Id. “The person claiming the possession has the burden of proving each of these elements by clear and convincing evidence.” Id.
¶ 18. The undisputed evidence at trial indicated that the Klaus entities used Camille’s road with the permission of the Thomases’ predecessor in title as well as the Thomases. Because the Klaus entities were permissive users, they cannot demonstrate the “hostility” element necessary to demonstrate a prima facie ease of a prescriptive easement.
¶ 19. Additionally, the Klaus entities failed to demonstrate by clear and convincing evidence that their use of Ernest’s road and/or Camille’s road was exclusive. The Mississippi Supreme Court has defined exclusivity as “having the intention to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right.” Id. at 476(¶ 23) (internal quotations omitted). There is absolutely no evidence that the Klaus entities behaved as such. Instead, the evidence at trial indicated that the Klaus entities took measures to avoid damaging the Thom-ases’ property or making it impassable. The evidence also indicated that when the Klaus entities or someone acting on their behalf damaged the Thomases’ property or made one of the private roads impassable, the Klaus entities took steps to remedy the problem to avoid harming their relationship with the Thomases-sometimes more promptly than others. In other words, the chancellor could have reasonably concluded that the Klaus entities behaved as stewards of the Thomases’ property rather than owners of the property per se. Accordingly, we find no merit to this issue.
¶ 20. THE JUDGMENT OF THE SHARKEY COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.

. Sabill Farms Partnership is comprised of four corporations: David Klaus Farms, Inc., DK and HG Farms, Inc., SGK and HG Farms, Inc., and WJK and DK Farms, Inc. David Klaus is the president, secretary, and director of all four of those corporations. Similarly, David is listed as the president, treasurer, secretary, and director of Evanna Plantation, Inc. As for the David Klaus Trust, David’s aunt and uncle devised property to the trust via their wills. David is the trustee of the David Klaus Trust.

. At trial, David was very specific regarding his preference. David testified that he preferred to use Ernest’s road, which did not involve driving over a culvert, rather than Camille's road, which required driving over a culvert. David unequivocally testified: "we do not want access on that Coon Bayou crossing.” On redirect, David clarified that he was not abandoning his claim for an easement over Camille's road.